UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRANDY DAILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:16-CV-541 (CEJ) |
| ) | |
| MICHAEL WALSH and EAGLE BANK ) | |
| AND TRUST COMPANY OF ) | |
| JEFFERSON COUNTY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the defendants' motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). In response, plaintiff has filed a motion for summary judgment. Defendants move to strike plaintiff's summary judgment motion for failure to comply with the requirements of Fed.R.Civ.P. 56 and the Local Rules of this Court.

Plaintiff Brandy Dailey filed this *pro se* complaint for declaratory judgment on behalf of herself and the People of Missouri. She alleges that defendants Eagle Bank and Trust Company and Michael Walsh, the bank's president and chief executive officer, engaged in discriminatory acts against her by preventing her from operating her irrevocable life insurance trust fund as it was professionally drafted to be operated. [Doc. #1 at 3]. She further alleges that defendant Eagle Bank deliberately violated the provision of a trust agreement to transfer funds as directed by her trust agreement and breached its contract to process her "paperwork requirement in a timely manner consistent with its policy as a trust company." Finally, she alleges that the bank misrepresented material facts when it stated it is

not a trust company. [Doc. #1 at 6]. She asserts claims for violation of the Fourteenth Amendment, breach of contract, and breach of fiduciary duty. Plaintiff seeks compensatory and punitive damages.[1]

I. Background[2]

On September 22, 2015, plaintiff purchased a policy of whole life insurance in the amount of $500,000, designating her husband, Perron T. Dailey, as the beneficiary. [Doc. #1-3 at 15]. On October 19, 2015, plaintiff executed the "Dailey Irrevocable Life Insurance Funded Trust," of which she was the settlor and trustee, and to which she transferred $100.00. [Doc. #1-3 at 20-21]. According to plaintiff, an insured trust is "an agreement between insured and trustee, whereby the proceeds of policy are paid directly to trustee for investment and distribution to designated beneficiaries . . . as insured has directed in Trust Agreement." [Doc. #1 at 3].

Plaintiff then opened depository accounts in the trust's name at defendant Eagle Bank. See Doc. #1-3 at 3. Beginning in January 2016, she wrote several

---

[1] In proposed settlement of her claim, plaintiff wants the bank to "create a buy and hold Policy in the name [of] our Trust at 50% of the claimant's investment at Eagle Bank or $500k and as an immediate action transfer 20% of Proceeds of Policy face value of Funds in our interest bearing account as liquid as directed in the provision of claimant's Trust Agreement." In the event that the parties cannot reach settlement, plaintiff seeks damages in the amount of "10 x plaintiff's investment x the number in months that it takes to favorably resolve" the dispute, which she elsewhere defines as "10 x 1.3" million times the number of months it takes to reach full and final resolution. [Doc. #1 at 4, 6].

[2] When ruling on a motion to dismiss, a court generally may not consider matters outside the pleadings. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). It may, however, consider matters of public records, materials that do not contradict the complaint, exhibits attached to the pleadings, and materials necessarily embraced by the complaint. Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010). Plaintiff has attached to her complaint a document dated October 19, 2015 entitled "Dailey Irrevocable Life Insurance Funded Trust," [Doc. #1-3 at 20-21]; a document entitled Amendment to Policy Schedule Pages [Doc. #1-3 at 15]; and plaintiff's correspondence with defendant Michael Walsh and other employees of Eagle Bank. The Court has considered these materials.

letters to defendant Walsh and other bank employees asking that the bank "activate [the] Life Insurance Funded Trust," allow her to "do loan transactions as indicated in our trust Draft," "transfer . . . funds to [the] account," and "combine the Change of Owner/Assignment form and Change of Beneficiary form into one document." [Doc. #1-3 at 8, 2, 10].

On February 25, 2016, Matthew Bates, the bank's loan officer, wrote to plaintiff: "As I indicated in our meeting on February 2, 2016, . . . Eagle Bank would consider lending up to 60% of the current 'Cash Value' of life insurance policies." However, "[b]ased on the 'Amendment to Policy Schedule Pages'" provided by plaintiff, "the 'Cash Value' of each of these policies is currently $0.00, and accordingly do not have any lendable value at this time." [Doc. #1-3 at 17]. On March 18, 2016, Jaimie Mckeen, operations manager, wrote to plaintiff to "clarify that Eagle Bank and Trust Company does not act as a trust company and possesses no trust powers." Although the bank has responsibility to "house [her] depository accounts," it does not "have the ability to handle any documentation or processing" for the life insurance policy. Mckeen further stated that the bank "understands the type of trust" plaintiff has, and had opened depository accounts in the trust name. Mckeen explained that the bank also understands that, as trustee, plaintiff has the right to act and transact business on behalf of the trust. [Doc. #1-3 at 3]. On March 31, 2016, Alan J. Steinberg, counsel for the bank, wrote to plaintiff and asked her to get in touch with him so that he could better understand her instructions to the bank to determine whether her requests were "within the realm" of services the bank could provide. [Doc. #1-3 at 16]. In response, plaintiff asked Steinberg to contact the lawyer who drafted her trust, whom she did not identify by

3

name and whose name does not appear on the trust document she submitted with her complaint. She declined to meet with Steinberg, because "it would be a conflict of interest . . . because your first obligation is to your clients." [Doc. #1-3 at 13-14]. She filed suit on April 18, 2016.

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed.R.Civ.P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## III. Discussion

### A. Fourteenth Amendment Claim

Plaintiff alleges that defendants engaged in discriminatory acts in violation of her equal protection rights as guaranteed by the Fourteenth Amendment to the United States Constitution. The Court will construe this claim as arising under 42 U.S.C. § 1983, which is the only viable means of bringing a claim for damages under the Fourteenth Amendment. See Sanders v. Prentice–Hall Corp., 178 F.3d 1296 (6th Cir. 1999) ("The Constitution does not directly provide for damages; thus, in order to sustain his constitutional causes of action, [the plaintiff] must proceed under one of the statutes authorizing damages for constitutional violations."); see also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983").

To state a claim under § 1983, a plaintiff must allege that the defendants were acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). To act under color of state law, the defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Id. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "Merely private conduct, regardless of whether it is discriminatory or wrongful, is not conduct under color of state law and is not actionable under § 1983." Carpenter v. Extendicare Health Servs. Inc., No. CV 15-120 (MJD/JJK), 2015 WL 7729406, at *5 (D. Minn. Oct. 26, 2015), report and recommendation adopted, No. CV 15-120 (MJD/JJK), 2015 WL 7720477 (D. Minn. Nov. 30, 2015) (citing Americans United for Separation of Church and State v.

Prison Fellowship Ministries, Inc., 509 F.3d 406, 422 (8th Cir. 2007)). Giving plaintiff's complaint the benefit of liberal construction, the Court finds that she has not set forth a plausible claim that any defendant in this action is a state actor against whom a suit for constitutional violations can be maintained under § 1983.

**B.     State Law Claims**

In order to state a claim for breach of contract, plaintiff must allege (1) that she had an enforceable contract with defendants; (2) mutual obligations arising under the contract's terms; (3) defendants failed to perform obligations imposed by the contract; and (4) plaintiff was thereby damaged. See Jackson v. Williams, Robinson, White & Rigler, P.C., 230 S.W.3d 345, 348 (Mo. Ct. App. 2007). Plaintiff does not allege the existence of a contract or set forth any contractual obligations the defendants allegedly failed to perform. To the extent that plaintiff claims that defendants have an obligation to fund the trust's depository accounts, she cites no legal or factual basis for this claim. Indeed, as she acknowledges in her complaint, an insured trust is "an agreement between insured and trustee." [Doc. #1 at 3]. Similarly, she has cited no support for her contention that the bank has a duty to process paperwork related to the trust. Plaintiff fails to state a claim for breach of contract.

An adequately pleaded claim for breach of fiduciary duty consists of the following elements: "1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm." Robert T. McLean Irrevocable Trust v. Patrick Davis, P.C., 283 S.W.3d 786, 792-93 (Mo. Ct. App. 2009) (quoting Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 411 (Mo. Ct. App. 2000)). Here, plaintiff alleges that defendants "violated the provision of the

6

Trust Agreement to transfer funds as directed by the trust agreement." [Doc. #1 at 6]. However, defendants are not parties to the trust and thus have no duties arising under the trust document. Plaintiff does not identify any other duty allegedly breached by the defendants and fails to state a claim for breach of fiduciary duty.

\* \* \*

For the reasons discussed above,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. #8] is **granted**.

**IT IS FURTHER ORDERED** that all other pending motions are **denied as moot**.

A separate order of dismissal will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 30th day of June, 2016.